[Cite as *State v. Stover*, 2017-Ohio-291.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104388

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CLIFFORD P. STOVER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601721-A

**BEFORE:**  McCormack, P.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:**  January 26, 2017

**ATTORNEY FOR APPELLANT**

John T. Castele
Rockefeller Bldg., Suite 1310
614 W. Superior Ave.
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Andrea N. Isabella
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} Defendant-appellant Clifford Stover appeals from the judgment of the Cuyahoga County Court of Common Pleas. For the reasons that follow, we affirm.

Procedural History

{¶2} On December 15, 2015, Stover was charged as follows: (1) aggravated burglary; (2) burglary; (3) domestic violence, with a furthermore specification that Stover had previously been convicted of domestic violence; and (4) obstructing official business, with a furthermore specification that Stover created a risk of physical harm to his mother, the victim. The charges stemmed from an incident wherein Stover forced his way into his mother's home, knocking her down and eventually locking himself in his mother's bathroom. Stover pleaded not guilty to the charges, and the matter proceeded to a jury trial.

{¶3} The jury returned a guilty verdict on the charges of domestic violence, including its furthermore specification, and obstructing official business. The jury, however, found Stover not guilty of creating a risk of physical harm to his mother. The jury also found Stover not guilty of aggravated burglary and burglary. The court sentenced Stover to 12 months in prison on the domestic violence charge and 9 months local incarceration on obstructing official business, to be served concurrently.

{¶4} Stover now appeals his conviction. He contends that the state failed to present sufficient evidence to support his conviction for domestic violence and the conviction is against the manifest weight of the evidence.

Evidence at Trial

**{¶5}** On December 5, 2015, Andrea Stover, Clifford Stover's mother, was playing cards with friends at her Cleveland home when she heard her son banging on the door and yelling that someone was trying to kill him. Ms. Stover stated that she had not spoken with her son that day, he did not live with her, and he was not welcome in her home. She barricaded the door to her residence by placing her sofa against the door. She told her son that if he would not leave, she was going to call the police. Because he would not leave, Ms. Stover ran to her bedroom and phoned the police. By the time she had phoned the police and exited her bedroom, her son had broken through the front door of the house on the first level and ascended the stairs to Ms. Stover's second floor residence. Ms. Stover's friend attempted to hold the door to the living quarters closed, but Stover forced his way inside, making his way past the sofa and the friend. Ms. Stover stated that while her son was entering the home, he continued to shout that someone was trying to kill him.

**{¶6}** Ms. Stover testified that once her son was inside, he ran to the kitchen and retrieved two steak knives. They were then "face to face," and Stover threatened his mother with the knives, making twirling "martial arts" gestures with them, and told her that "somebody is going to die tonight." By this point, Ms. Stover's friends had left.

**{¶7}** Ms. Stover testified that her son has a history of running to the bathroom and locking the door, so she attempted to get to the bathroom before he did. As she tried

to make her way to the bathroom, Stover pushed his mother so hard that she fell to the ground. Stover ran to the bathroom and locked the door.

{¶8} As Stover locked himself in the bathroom, Ms. Stover went outside. Cleveland police officers Brandon Melbar and Joseph Sedlak arrived on the scene, having responded to a call from dispatch that a male, who was armed, had broken into a residence. The officers attempted to get information from two women on the scene, one of whom was Ms. Stover. The officers testified that the women appeared nervous and fearful and they were speaking fast. Officer Sedlak testified that the women were "in a highly excited state" as they attempted to describe the events to the officers.

{¶9} After speaking with the police officers, Ms. Stover went back inside the house and upstairs to her residence. The officers were concerned for her safety and followed Ms. Stover upstairs and brought her back outside. The officers testified that Stover repeatedly shouted through the bathroom door that he was going to kill himself, he was going to "shoot[] through the door" and kill others, and he would shoot anyone who attempted to enter the bathroom. Eventually, the SWAT team was called and successfully removed Stover from the bathroom.

## Sufficiency and Manifest Weight of the Evidence

{¶10} In his first assignment of error, Stover contends that his conviction for domestic violence was not supported by sufficient evidence. Specifically, Stover argues that the state failed to present sufficient evidence that he knowingly caused or attempted to cause physical harm to his mother. Stover also argues that the record does not

demonstrate that defense counsel "directly" stipulated to the prior conviction for attempted domestic violence and, thus, there is insufficient evidence to support the furthermore clause that enhances the domestic violence from a misdemeanor charge to a felony charge.

{¶11} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶12} Stover was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶13} Here, there is no dispute that the victim is a family member — Stover's mother. Stover argues, however, that the state failed to provide sufficient evidence that he knowingly caused or attempted to cause his mother physical harm. In support, Stover maintains that there is no evidence that his mother suffered any physical injury or pain, and in fact, Ms. Stover testified that she was not injured. Further, he claims that he pushed his mother in order to get to the bathroom, not to cause her any harm.

{¶14} The requisite culpability for domestic violence is "knowingly." "Knowingly" does not require the defendant to have a specific intent to cause a certain result; rather, that is the definition of "purposely." *State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶ 30. Stover's purpose for pushing his mother — getting to the bathroom — is therefore irrelevant. Regardless of his purpose, it is reasonable to infer that Stover was aware that by pushing his mother so hard that she fell to the ground, he would probably cause her some injury, even if only slight and fleeting. *Middleburg Hts. v. Musa*, 8th Dist. Cuyahoga No. 97941, 2013-Ohio-366 (finding the defendant acted knowingly where he was struggling with his wife for the car keys and was dragging her from their son's room to the outside of the residence and, thus, he was aware that he would probably cause some injury, albeit slight); *State v. Bailey*, 2d Dist. Montgomery No. 24861, 2012-Ohio-3274 (finding the defendant acted knowingly where he punched his mother in the back and attempted to knock her forcefully to the ground and, thus, he was aware that his actions would likely cause her injury).

**{¶15}** Moreover, an offender does not have to cause a tangible injury to his victim in order to be convicted of domestic violence in violation of R.C. 2919.25(A). *Cleveland v. Amoroso*, 8th Dist. Cuyahoga No. 100983, 2015-Ohio-95, ¶ 31, citing *State v. Roberson*, 5th Dist. Stark No. 2012CA00215, 2013-Ohio-3449, ¶ 18; *see also Strongsville v. Beall*, 8th Dist. Cuyahoga No. 103051, 2016-Ohio-1222, ¶ 7 (concluding the jury could have found that the defendant was attempting to cause physical harm when he tackled the victim, even where there is no tangible injury).

**{¶16}** Stover also claims that defense counsel did not "directly" stipulate to Stover's prior conviction of attempted domestic violence and, therefore, the state failed to present sufficient evidence to establish the furthermore clause. We find no merit to this argument.

**{¶17}** Stover's charge of domestic violence in Count 3 included a furthermore clause that stated as follows: "the offender previously had pleaded guilty to or been convicted of domestic violence * * * on or about 9/14/09, in the Cleveland Municipal Court, Cuyahoga County, Ohio, 2009 CRB 028893." The furthermore clause enhances the domestic violence charge from a misdemeanor of the first degree to a felony of the fourth degree. Prior to the commencement of the state's case, the parties advised the court that the defense stipulated to the prior conviction.

**{¶18}** After the state rested, however, defense counsel moved for a Crim.R. 29 acquittal on the furthermore clause (in addition to the domestic violence charge), stating that the indictment was defective, because the actual prior conviction was *attempted*

domestic violence, and the furthermore clause in the indictment incorrectly noted the prior conviction was for domestic violence. Counsel advised the court that he wished to withdraw his earlier stipulation to the prior conviction of domestic violence. The prosecutor objected, stating that "attempted domestic violence" is substantially similar to the charge of "domestic violence," and therefore, the "attempt" charge would be sufficient to support the prior conviction element of felony domestic violence. The court agreed with the state and permitted the state to amend the language in the furthermore clause of the indictment to reflect the corrected prior conviction of "attempted domestic violence."

{¶19} Thereafter, the following exchange occurred:

Court: Based upon the fact that it was an attempted domestic violence, I'm going to allow this to go forward as a furthermore. * * * With that being said, then, this Court's ruling based upon * * * the analysis that attempted assault is the same as attempted domestic violence in terms of an enhancement issue, is the defense going to stipulate then to the attempted domestic violence —

Defense
Counsel: Conviction?

Court: — conviction. Which is what it is, attempted violence. I granted the state's amendment. I allowed the attempt statute in the furthermore count 3, and I will recognize that in the jury instructions and the indictment, okay.

Prosecutor: Your Honor, that would be in —

Court: Count 3.

Prosecutor: Yeah, Count 3. Thank you.

Court:        Count 3 furthermore.    All right.

The court then allowed the state to address defense counsel's Crim.R. 29 motion regarding the domestic violence charge.    After hearing defense counsel's rebuttal, the court denied the defense's motion.

{¶20} On appeal, Stover does not dispute that a stipulation to a prior conviction for attempted domestic violence would sufficiently support the prior conviction element of the furthermore clause in this case and, therefore, enhance the charge to felony domestic violence.    Stover contends, however, that the record does not demonstrate that defense counsel actually, or "directly," stipulated to the prior conviction for attempted domestic violence.

{¶21} It is well settled that "[w]hen a prior conviction elevates a misdemeanor to a felony, 'the prior conviction is an essential element of the crime, and [it] must be proved by the state.'"    *State v. Tate*, 138 Ohio St.3d 139, 2014-Ohio-44, 4 N.E.3d 1016, ¶ 17, quoting *State v. Allen*, 29 Ohio St.3d 53, 54, 506 N.E.2d 199 (1987).    An offender may, however, stipulate to a prior conviction in order to avoid having the evidence presented to a jury.    *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 14, citing R.C. 2945.75(B)(1).    A stipulation "is nothing more than agreement as to the veracity of a fact in issue."    *Tate* at ¶ 19, citing *Black's Law Dictionary* 1550 (9th Ed.2009).

**{¶22}** Based upon a fair reading of the foregoing exchange and the record in its entirety, we find that defense counsel sufficiently stipulated to the prior conviction of attempted domestic violence.

**{¶23}** The record reflects that defense counsel initially stipulated to the prior conviction of domestic violence. It was only after the state rested that defense counsel advised the court that he wished to withdraw his prior stipulation because the actual prior conviction was attempted domestic violence. Following arguments on the record, the court permitted the state to amend the language in the furthermore clause to correctly reflect the prior conviction of "attempted domestic violence," noting that the charges are "substantially similar." When the court asked if defense counsel wished to stipulate to the attempted domestic violence, counsel's only interjection was to helpfully complete the court's description of the element of the furthermore clause with the word "conviction." Defense counsel raised no objections to the court's pronouncement, nor did he renew his desire to withdraw the earlier stipulation. In fact, counsel proceeded with his Crim.R. 29 argument as it related to the elements of the domestic violence charge and then rested. The matter of the stipulation did not surface again until the court instructed the jury.

**{¶24}** Under these circumstances, we find that defense counsel sufficiently stipulated that Stover had been previously convicted of attempted domestic violence. Therefore, the state established sufficient evidence of the prior conviction element of the furthermore clause in Count 3, domestic violence.

**{¶25}** Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of domestic violence in violation of R.C. 2919.25(A) and the furthermore clause proven beyond a reasonable doubt. Thus, Stover's conviction for domestic violence was supported by sufficient evidence.

**{¶26}** Stover's first assignment of error is overruled.

**{¶27}** In his second assignment of error, Stover contends that his conviction for domestic violence was against the manifest weight of the evidence. In support, he advances the same argument: he pushed his mother so that he could get to the bathroom, not to cause her physical harm, and his mother suffered no injuries. This argument has no merit.

**{¶28}** While the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. Also unlike a challenge to the sufficiency of the evidence, a manifest weight challenge raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new

trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A finding that a conviction was supported by the manifest weight of the evidence, however, necessarily includes a finding of sufficiency. *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 14, citing *Thompkins* at 388.

**{¶29}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18. Although the reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so "with the caveat that the trier of fact is in the best position to determine a witness' credibility through its observation of his or her demeanor, gestures, and voice inflections." *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 39.

**{¶30}** As previously discussed, the requisite mental state of the defendant is "knowingly," which, regardless of purpose or intent, requires only that defendant be aware that his actions would probably cause a certain result. Further, evidence of a tangible injury is not required. Here, Ms. Stover testified that her son broke into her home uninvited. He grabbed two steak knives and waved them in her face, claiming that

"somebody [is] going to die." He then pushed her so hard that she fell to the ground, as he made his way to the bathroom. The police officers on the scene testified that Ms. Stover and the other female on the scene appeared nervous and fearful. The jury evidently chose to believe the testimony of the witnesses.

{¶31} We find that this is not one of the exceptional cases where the evidence weighs heavily against the conviction or where the trier of fact lost its way and created a manifest miscarriage of injustice.

{¶32} Accordingly, Stover's second assignment of error is overruled.

{¶33} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
MELODY J. STEWART, J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

MELODY J. STEWART, J., DISSENTING:

**{¶34}** I respectfully dissent from the majority's conclusion that the state presented sufficient evidence that Stover either knowingly caused his mother physical harm or attempted to cause her physical harm. The mother's testimony revealed that she did not suffer any harm when her son pushed her. Therefore, our sole focus should be on whether Stover attempted to cause his mother physical harm.

**{¶35}** The testimony at trial reveals that Stover and his mother were both jockeying to get to the bathroom first. Although the mother got to the bathroom before her son, Stover pushed her out of the doorway to gain access, and his mother fell down as a result. The precise testimony is as follows:

[Mother]: After that — I know Clifford has a history of running to my bathroom and locking the door.

[Prosecutor]: Okay.

[Mother]: So I tried to beat him in the bathroom, but I couldn't. And he pushed me out of the bathroom to lock the door. And that's when the police and everybody came.

[Prosecutor]: Can you describe that a little more carefully for me? How would you say that he pushed you?

[Mother]: Well, like a push.

[Prosecutor]: With his hands?

[Mother]: Yeah.

[Prosecutor]: Did it knock you over?

[Mother]: Yes, I fell.

[Prosecutor]: Were you injured?

[Mother]: No, I didn't hurt myself.

[Prosecutor]:   Did it cause you any physical pain, though?

[Mother]:            No.

Aside from the push itself, the state failed to present any evidence or testimony tending to show that Stover knowingly attempted to cause his mother harm.  To the contrary the evidence suggests that the mother and son were vying for access to the bathroom when Stover pushed her.  Although the majority argues that Stover pushed his mother hard enough that she fell to the ground, there was no testimony establishing the actual amount of force used.  Indeed, the fact that the mother did not experience any physical pain nor was she harmed in any way suggests that the force used was more slight than significant, or at least with deliberation to unblock access to the bathroom than to harm her.  Even the prosecutor admitted in closing argument that Stover pushed his mother "in an attempt to reach the bathroom." Not in an attempt to harm her.

{¶36} This is not a case where, for instance, a defendant intentionally swung at a family member with a balled up fist but missed — a case which establishes a knowing attempt to cause physical harm.[1]   Instead, this case is similar to that of *State v. Kemper*, 2012-Ohio-5958, 983 N.E.2d 951 (12th Dist.), a case involving an assault charge[2] where the appellate court found insufficient evidence establishing a knowing attempt to cause

[1] I use this only as an example of what attempt to cause physical harm might look like, while recognizing that there are numerous other examples that could be used.

[2] The crime of domestic violence under R.C. 2919.25(A) and assault under R.C. 2903.13(A) are the same in every respect except that domestic violence involves a family or household member.

physical harm, where the only evidence presented was that the defendant pushed his ex-girlfriend out of the way several times in an attempt to gain entry into his home. I would therefore reverse Stover's domestic violence conviction.